1  Stephen M. Harris (State Bar No. 110626)
   smh@kpclegal.com
2  KNAPP, PETERSEN & CLARKE
   550 North Brand Boulevard, Suite 1500
3  Glendale, California 91203-1922
   Telephone:  (818) 547-5000
4  Facsimile:  (818) 547-5329

5  Robert L. Starr, Bar No. 183052
   robert@starrlawmail.com
6  THE LAW OFFICES OF ROBERT L. STARR
   23277 Ventura Boulevard
7  Woodland Hills, California 91364-1002
   Telephone: (818) 225-9040
8  Facsimile: (818) 225-9042

9  Attorneys for Plaintiffs
   WALTER CHANG and ANNIE STUBBS,
10 individually, and on behalf of a class of similarly
   situated individuals

FILED
CLERK, U.S. DISTRICT COURT

JUL - 1 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

11          UNITED STATES DISTRICT COURT

12          CENTRAL DISTRICT OF CALIFORNIA

13

14  WALTER CHANG and ANNIE              )  NO.   CV13-02902 PSG (AGRx)
    STUBBS, individually, and on behalf of a  )  [CLASS ACTION]
15  class of similarly situated individuals,  )
                                        )  Assigned for All Purposes to
16          Plaintiffs,                 )  the Honorable Philip S. Gutierrez -
                                        )  Ctrm. 880
17      v.                              )
                                        )  **PLAINTIFFS' FIRST AMENDED**
18  BMW OF NORTH AMERICA, LLC,          )  **CLASS ACTION COMPLAINT**
                                        )  **FOR:**
19          Defendant.                  )
                                        )  **1.    Violations of California**
20                                      )  **       Consumer Legal Remedies Act**
                                        )  **2.    Violations of Unfair Business**
21                                      )  **       Practices Act**
                                        )  **3.    Fraud**
22                                      )
                                        )  **DEMAND FOR JURY TRIAL**
23                                      )
                          _____)  Date Action Filed: April 24, 2013
24

25

26

27

28

KNAPP,
PETERSEN
& CLARKE

-1-

1765701.1  08000/00974

# INTRODUCTION

1.     Plaintiffs Walter Chang and Annie Stubbs ("Plaintiffs") bring this action for themselves and on behalf all persons in the States of California and Florida who purchased or leased, from 2000 to the present, certain BMW vehicles as more fully described below ("Class Vehicles"), manufactured, distributed, and sold by BMW of North America, LLC, and/or its related subsidiaries or affiliates ("BMW" or "Defendant").

2.     BMW widely advertises the Class Vehicles as being of the highest quality and durability, asserting in marketing materials that BMW manufactures the "Ultimate Driving Machine", and that Class Vehicles are safe and reliable vehicles.

3.     All persons who have purchased or leased a Class Vehicle in the States of California and Florida are herein referred to as Class Members ("Class Members").

4.     The Class Vehicles consist of all BMW E53 Model vehicles (also known as model year 2000-2006 BMW X5 vehicles) equipped with panoramic sunroofs ("sunroofs"); All BMW E60 and E61 model vehicles produced up until November of 2008 (also known as model year 2003-2010 BMW 5 Series Vehicles) equipped with sunroofs; All BMW E65 and E66 model vehicles (also known as Model Year 2001-2008 BMW 7 series vehicles) equipped with sunroofs; All BMW E70 models vehicles produced up to March of 2009 (also known as Model Year 2006-2013 BMW X5 vehicles) equipped with sunroofs; All BMW F01 and F02 model vehicles produced up to December of 2008 (also known as Model Year 2008-2013 BMW services 7 vehicles) equipped with sunroofs; All BMW E71 model vehicles produced up to March of 2009 (also known as Model Year 2008-2013 BMW X6 vehicles) equipped with sunroofs; All BMW E83 model vehicles produced up to June of 2009(also known as Model Year 2003-2008 BMW X3 vehicles) equipped with sunroofs; and All BMW E91 sport wagon vehicles produced up to March of 2009 (also known as Model year 2004-2011 BMW 3

KNAPP,
PETERSEN
& CLARKE

-2-

1765701.1  08000/00974

1   series sport wagons) equipped with sunroofs.

2        5.    Because of defects in the design, manufacture, and assembly of the

3   sunroofs installed in the Class Vehicles, the Class Vehicles, and their sunroofs, are

4   by their nature susceptible to water leaking from the outside environment into the

5   interior of the Class Vehicles, "the Sunroof Defect", causing numerous safety

6   related problems, including, but not limited to, electrical failure, stalling, loss of

7   steering ability, and other significant damage to Class Vehicles.

8        6.    The occurrence of the Sunroof Defect is the result of the sunroof

9   components installed in the Class Vehicles being defectively designed,

10  manufactured, and assembled. Plaintiffs do not know at this time if the Sunroof

11  Defect has resulted in traffic accidents; however, numerous class members have

12  complained that the Sunroof Defect has posed a serious safety hazard in the

13  roadway.

14       7.    The Sunroof Defect is a safety hazard, both for occupants of the Class

15  Vehicles driven on the road, and for pedestrians, and occupants of other vehicles on

16  the road.  The reason that the Sunroof Defect is a safety hazard is that Class

17  Vehicles will experience electrical failure, stalling, and loss of steering ability

18  while the Class Vehicles are on the road, in traffic.  These problems result in Class

19  Vehicles being rendered disabled in the middle of traffic, and stuck on the road, in

20  traffic, susceptible to being hit by other vehicles.  Moreover, the Sunroof Defect

21  can also result in the Class Vehicles being difficult or impossible to control while in

22  the roadway traveling at traffic speeds..  All of these safety issues caused by the

23  Sunroof Defect increase the likelihood of motor-vehicle accidents and increase the

24  likelihood of personal injury.

25       8.    In addition to the safety hazards, the costs of the Sunroof Defect to

26  consumers can be and often is exorbitant, because consumers have been and will

27  continue to be required to pay thousands of dollars both to diagnose and repair the

28  damages caused by the Sunroof Defect.  Additionally, the presence of the Sunroof

KNAPP,
PETERSEN
& CLARKE

-3-

1   Defect in the Class Vehicles has resulted in the vehicles having diminished value,

2   thereby depriving plaintiffs and the Class Members of the benefit of the vehicle

3   (and its value) that they paid for.

4       9.     It is Plaintiffs' information and belief that BMW has been aware of the

5   Sunroof Defect dating back to 1999, which was years before Plaintiffs purchased

6   their Class Vehicles.  It is Plaintiffs' information and belief that BMW acquired its

7   knowledge of the Sunroof Defect through sources not available to plaintiffs or

8   Class Members, including but not limited to pre-release testing data, early

9   consumer and dealer complaints about the Sunroof Defect to BMW, testing

10  conducted in response to those complaints, aggregate data from BMW's dealers

11  (such as warranty data, goodwill data, repair data and parts purchases), and from

12  other internal sources.

13      10.    BMW knew or should have known that the Class Vehicles were

14  defective and not fit for their intended purpose of providing consumers with safe

15  and reliable transportation, due to the Sunroof Defect.  Nevertheless, BMW actively

16  concealed and failed to disclose the Sunroof Defect to Plaintiffs and the Class

17  Members at the time of purchase or lease and thereafter.

18      11.    BMW is aware of the Sunroof Defect, as stated above, but routinely

19  denies consumers requests for reimbursement of the expenses incurred in

20  connection with the Sunroof Defect. There have been numerous consumer

21  complaints concerning the Sunroof Defect, lodged both with BMW and with the

22  National Highway Traffic Safety Administration.  Notwithstanding BMW's

23  knowledge of these complaints, BMW has refused to warn consumers about the

24  defect, has refused to remedy the Sunroof Defect, and has refused to compensate

25  consumers for the damages resulting from this defect.

26      12.    As a result of BMW's misconduct alleged herein, Plaintiffs and the

27  other owners and lessees of Class Vehicles have been harmed and have suffered

28  actual damages.  The actual damages are that Class Vehicles continue to experience

KNAPP,
PETERSEN
& CLARKE

-4-

1 | mechanical failure due to the Sunroof Defect, that BMW has not come up with a
2 | permanent remedy for this defect, that BMW has not reimbursed consumers for
3 | money expended due to the Sunroof Defect, and that BMW has not implemented a
4 | permanent remedy relating to the Sunroof Defect.

5 | **PARTIES**

6 | **Plaintiffs**

7 |      13.     Plaintiff Walter Chang ("Chang") resides in the state of California.
8 | Chang purchased a used 2006 BMW 530XI vehicle ("Chang Vehicle") in
9 | December of 2006. The Chang Vehicle was purchased primarily for personal,
10 | family and household non-commercial purposes. This vehicle was manufactured,
11 | sold, distributed, advertised, marketed and warranted by BMW, and bears the
12 | Vehicle Identification No. WBANN735X6CN01926. California Civil Code Section
13 | 1761(a), which defines goods, does not restrict its definition to goods which are
14 | new. Nor does the definition of transaction in subdivision (e) in this statute require
15 | that the good is new, and the definition of consumer in subdivision (d) does not
16 | require the item purchased by the consumer to be a new item. The same principle
17 | applies all of Chang's theories.

18 |      14.     In February of 2010, Chang's BMW experienced water intrusion as a
19 | result of the Sunroof Defect. Chang took the Chang Vehicle to a BMW dealer in
20 | Mountain View, California, complaining of the flooding. BMW of Mountain View
21 | advised Chang that the warranty applicable to the Chang Vehicle had expired, and
22 | that BMW would not offer Chang any remedy with respect to the water intrusion.
23 | Subsequently, Chang took the Chang Vehicle to Dinan, an independent repair
24 | facility. Dinan repaired the Chang Vehicle. Subsequently, the Chang Vehicle again
25 | experienced damage as a result of the Sunroof Defect in November of 2010. Again,
26 | Chang took the Chang Vehicle to Dinan for repairs. Chang incurred out of pocket
27 | costs in connection with the repair work, although some of the costs were covered
28 | by insurance.

KNAPP,
PETERSEN
& CLARKE

-5-

1    15.   BMW refused to pay for or reimburse Chang for the cost of these
2  repairs.

3    16.   Plaintiff Annie W. Stubbs ("Stubbs") resides in the state of Florida.
4  Stubbs purchased a new 2008 BMW 535I vehicle ("Stubbs Vehicle") in 2008. The
5  Stubbs Vehicle was purchased primarily for personal, family and household non-
6  commercial purposes. The Stubbs Vehicle was manufactured, sold, distributed,
7  advertised, marketed and warranted by BMW, and bears the Vehicle Identification
8  No. WBANW13578CZ73403.

9    17.   In September of 2012, the Stubbs Vehicle experienced water intrusion
10  as a result of the Sunroof Defect. Stubbs, in connection with the repair of the
11  Stubbs Vehicle, was advised that the warranty had expired, and was compelled to
12  pay for the cost of the repair of the damage caused by the Sunroof Defect. Stubbs
13  incurred out of pocket costs in connection with the repair work, although some of
14  the costs were covered by insurance.

15    18.   BMW refused to pay for or reimburse Stubbs for the cost of these
16  repairs.

17  **Defendant**

18    19.   BMW is a Limited Liability Company organized and in existence
19  under the laws of the State of New Jersey and registered with the California
20  Department of Corporations to conduct business in California.  At all times relevant
21  herein, BMW was engaged in the business of designing, manufacturing,
22  constructing, assembling, marketing, distributing, and selling automobiles and other
23  motor vehicles and motor vehicle components throughout the United States of
24  America.

25                              **JURISDICTION**

26    20.   This is a class action.

27    21.   Members of the Proposed Plaintiff Class are citizens of states different
28  from the home state of Defendant.

KNAPP,
PETERSEN
& CLARKE

-6-

1765701.1  08000/00974

1   22.   On information and belief, aggregate claims of individual Class
2   Members exceed $5,000,000.00, exclusive of interest and costs.

3   23.   Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

4                                   **VENUE**

5   24.   BMW resides in this district such that personal jurisdiction is
6   appropriate.  Defendant is deemed to reside in this district pursuant to 28 U.S.C. §
7   1391(a).

8   25.   In addition, a substantial part of the events or omissions giving rise to
9   these claims and a substantial part of the property that is the subject of this action
10  are in this district.

11  26.   Venue is thus proper in this Court pursuant to 28 U.S.C. § 1391(a).

12                              **APPLICABLE LAW**

13  27.   California and Florida State law applies to all claims in this action.

14                          **FACTUAL ALLEGATIONS**

15  28.   For years, BMW has designed, manufactured, distributed, sold, and
16  leased the Class Vehicles.  BMW has sold, directly or indirectly, through dealers
17  and other retail outlets, thousands of Class Vehicles.

18  29.   This lawsuit concerns all Class Vehicles. Attached hereto as exhibits 3-
19  4 are examples of BMW TSB's (technical service bulletins) which establish that all
20  the Class Vehicles defined herein have the same Sunroof Defect.

21  30.   Because of defects in the design, manufacture, and assembly of the
22  sunroofs installed in the Class Vehicles, the Class Vehicles, and their sunroofs, are
23  by their nature susceptible to water leaking from the sunroofs of the Class Vehicles
24  into the interior of the Class Vehicles, "the Sunroof Defect", causing numerous
25  safety related problems, including, but not limited to, electrical failure, stalling, loss
26  of steering ability, and other significant damage to Class Vehicles.

27  31.   The occurrence of the Sunroof Defect is the result of the sunroof

KNAPP,
PETERSEN
& CLARKE

28  components installed in the Class Vehicles being defectively designed,

-7-

1   manufactured, and installed. Plaintiffs do not know at this time if the Sunroof
2   Defect has resulted in traffic accidents, however, numerous class members have
3   complained that the Sunroof Defect has posed a serious safety hazard in the
4   roadway.

5       32.    The Sunroof Defect is a safety hazard, both for occupants of the Class
6   Vehicles driven on the road, and for pedestrians, and occupants of other vehicles on
7   the road.  The reason that the Sunroof Defect is a safety hazard is that Class
8   Vehicles will experience electrical failure, stalling, and loss of steering ability
9   while the Class Vehicles are on the road, in traffic.  These problems result in Class
10  Vehicles being rendered disabled in the middle of traffic, and stuck on the road, in
11  traffic, susceptible to being hit by other vehicles.  Moreover, the Sunroof Defect
12  can also make it difficult or impossible to control Class Vehicles.  All of these
13  safety issues caused by the Sunroof Defect increase the likelihood of motor-vehicle
14  accidents and increase the risk of serious injury.

15      33.    In addition to the safety hazards, the costs of the Sunroof Defect to
16  consumers can be exorbitant, because consumers are be required to pay thousands
17  of dollars both to diagnose and repair the damages caused by the Sunroof Defect.
18  Additionally, the presence of the Sunroof Defect in the Class Vehicles has resulted
19  in the vehicles having diminished value, thereby depriving plaintiffs and the Class
20  Members of the benefit of the vehicle (and its value) that they paid for.

21      34.    It is Plaintiffs' information and belief that BMW was aware of the
22  Sunroof Defect dating back to 1999, which was years before Plaintiffs purchased
23  their Class Vehicles.  BMW acquired its knowledge of the Sunroof Defect through
24  sources not available to plaintiffs or Class Members, including but not limited to
25  pre-release testing data, early consumer and dealer complaints about the Sunroof
26  Defect to BMW, testing conducted in response to those complaints, aggregate data
27  from BMW's dealers (such as warranty data, goodwill data, repair data and parts
28  purchases), and from other internal sources.

KNAPP,
PETERSEN
& CLARKE

-8-

35.   BMW knew or should have known that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation.  Nevertheless, BMW actively concealed and failed to disclose this defect to Plaintiffs and the Class Members at the time of purchase or lease and thereafter.

36.   BMW is aware of the Sunroof Defect, as stated above, but routinely denies consumers requests for reimbursement of the expenses incurred in connection with the Sunroof Defect. There have been numerous consumer complaints concerning the Sunroof Defect, lodged both with BMW and with the National Highway Traffic Safety Administration, which BMW has ignored. BMW has refused to warn consumers about the defect, has refused to remedy the Sunroof Defect, and has refused to compensate consumers for the damages resulting from this defect, despite BMW's knowledge of the Sunroof Defect.

37.   As a result of BMW's misconduct alleged herein, Plaintiffs and the other owners and lessees of Class Vehicles have been harmed and have suffered actual damages, in that the Class Vehicles continue to experience mechanical failure due to the Sunroof Defect, and BMW has not come up with a permanent remedy for this defect.  Furthermore, owners and lessees of Class Vehicles have incurred, and will continue to incur out of pocket unreimbursed costs and expenses relating to the Sunroof Defect.

38.   The Class Vehicles come with a basic 4 year / 50,000 mile warranty. BMW began selling the Class Vehicles in 1999.

39.   BMW refuses to cover or pay for repairs occurring outside of the warranty period.

40.   Furthermore, BMW fails to warn customers about the Sunroof Defect, and about the effects of the Sunroof Defect on the Class Vehicles, which makes the Class Vehicles susceptible to damage, loss of steering, loss of power, and electrical failure.

KNAPP,
PETERSEN
& CLARKE

-9-

41.   It is Plaintiffs information and belief that the Sunroof Defect is a pervasive defect affecting every single Class Vehicle, and posing a serious safety hazard for the general public.

### BMW Has Exclusive Knowledge Of The Sunroof Defect.

42.   BMW has superior and exclusive knowledge of the Sunroof Defect, and knew that the defect was not known or reasonably discoverable by Plaintiff and Class Members prior to their purchase or lease of the Class Vehicles.

43.   Only BMW had access to information about the significant risks associated with the Sunroof Defect relating to the Class Vehicles, through BMW's dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among other internal sources of aggregate information about the problem.

44.   The existence of the Sunroof Defect is a fact that would be considered material by a reasonable consumer deciding whether to purchase or lease a vehicle. Had Plaintiffs and other Class Members known that the Sunroof Defect existed, they would not have purchased the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle will not experience the Sunroof Defect, and will be safe to operate.  Plaintiffs and Class Members further expect and assume that BMW will not sell or lease vehicles with known safety defects, such as the Sunroof Defect, and will disclose any such defects to its consumers when it learns of the defect.  They do not expect BMW to fail to disclose the Sunroof Defect to them, and to refuse to fix the Sunroof Defect.

### BMW Has Actively Concealed The Sunroof Defect.

45.   While BMW has been fully aware of the Sunroof Defect in the Class Vehicles, BMW has actively concealed the existence and nature of the Sunroof Defect from Plaintiffs and Class Members at the time purchase or sale and thereafter.  Specifically, BMW has:

///

KNAPP,
PETERSEN
& CLARKE

-10-

1              a.      failed to disclose, at and after the time of purchase or lease and

2   repair, any and all known material defects or material nonconformity of the Class

3   Vehicles, including the Sunroof Defect;

4              b.      failed to disclose at the time of purchase or lease that the Class

5   Vehicles were not in good in working order, were defective, and were not fit for

6   their intended purposes; and

7              c.      failed to disclose or actively concealed the fact that the Class

8   Vehicles were defective, despite the fact that BMW learned of the Sunroof Defect

9   through consumer complaints as, as well as through other internal sources, as early

10  as 1999, if not before.

11     46.    BMW has concealed the defect from consumers by not disclosing the

12  true nature of the Sunroof Defect to Class Members, by not disclosing to Class

13  Members that the repairs that are made in response to complaints relating to the

14  Sunroof Defect are not permanent fixes for the problem, and by failing to disclose

15  to Class Members that the Sunroof Defect is a serious safety hazard.

16     47.    To this day, BMW still has not notified Plaintiffs and the Class

17  Members that their vehicles suffer from the Sunroof Defect, which is a systemic

18  defect, BMW has not implemented a reliable fix for the defect, and BMW has not

19  completely reimbursed consumers for monies paid by consumers to diagnose and/or

20  repair the problem.

21     48.    Plaintiffs and Class Members have expended money to make repairs as

22  a result of the Sunroof Defect, despite BMW's knowledge of the defect.  Moreover,

23  even when BMW has authorized repairs to be made at its dealerships, BMW has

24  failed to fully disclose to Class Members that the repairs do not permanently solve

25  the Sunroof Defect.

26     49.    BMW has caused Plaintiffs and Members of the Class to expend

27  money at its dealerships or other repair facilities for purposes of repairing damage

28  caused by the Sunroof Defect, despite BMW's knowledge of the defect.

KNAPP,
PETERSEN
& CLARKE

-11-

1    50.   The Members of the Class have not received the value for which they

2   bargained when they purchased or leased the Class Vehicles.

3    51.   As a result of the defects, the value of the Class Vehicles has

4   diminished, including without limitation re-sale value.

5                 **TOLLING OF THE STATUTE OF LIMITATIONS**

6    52.   Since the defects in the design or manufacture of the Class Vehicles

7   cannot be detected until the defect manifests itself, Plaintiffs and the Class

8   Members were not reasonably able to discover the problem until after purchasing or

9   leasing the Class Vehicles, despite their exercise of due diligence.

10    53.   Plaintiffs and the Class Members had no realistic ability to discern that

11   the Class Vehicles were defective until after Plaintiffs and the Class Members

12   experienced the Sunroof Defect.  In addition, despite their due diligence, Plaintiffs

13   and the Class Members could not reasonably have been expected to learn or

14   discover that they were deceived and that material information concerning the Class

15   Vehicles had been concealed from them until manifestation of the Sunroof Defect.

16   Therefore, the discovery rule is applicable to the claims asserted by Plaintiffs and

17   the Class Members.

18    54.   Upon information and belief, BMW has known of the defect in the

19   Class Vehicles since at least 1999, if not earlier, and has concealed from or failed to

20   alert owners and lessees of the Class Vehicles of the full and complete nature of the

21   Sunroof Defect.

22    55.   Any applicable statute of limitation has therefore been tolled by

23   BMW's knowledge, active concealment, and denial of the facts alleged herein.

24   BMW is further estopped from relying on any statute of limitation because of its

25   concealment of the defective nature of the Class Vehicles.

26                    **CLASS ACTION ALLEGATIONS**

27    56.   Plaintiffs brings this lawsuit as a class action on behalf of themselves

28   and all other Class Members similarly situated as members of the proposed Plaintiff

KNAPP,
PETERSEN
& CLARKE

-12-

1  Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2).

2  This action satisfies the numerosity, commonality, typicality, adequacy,

3  predominance, and superiority requirements of those provisions.

4        57.    The Class and Sub-Class are defined as:

5                 Class: All Persons in the State of California or State of

6                 Florida who purchased or leased a Class Vehicle.

7                 Sub-Class:   All Class Members who are "consumers" within

8                 the meaning of California Civil Code § 1761(d) or persons

9                 within the meaning of Florida Revised Statutes, Section

10                 501.211 (2) ("the Sub-Class").

11        58.    Excluded from the Class and Sub-Classes are: (1) Defendant, any

12  entity or division in which Defendant has a controlling interest, and its legal

13  representatives, officers, directors, assigns, and successors; (2) the Judge to whom

14  this case is assigned and the Judge's staff; and (3) those persons who have suffered

15  personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right

16  to amend the Class and Sub-Classes definitions if discovery and further

17  investigation reveal that the Class and Sub-Classes should be expanded or

18  otherwise modified.

19        59.    Numerosity: Although the exact number of Class Members is uncertain

20  and can only be ascertained through appropriate discovery, the number is great

21  enough such that joinder is impracticable.  The disposition of the claims of these

22  Class Members in a single action will provide substantial benefits to all parties and

23  to the Court.  The Class Members are readily identifiable from information and

24  records in Defendant's possession, custody, or control, as well as from records kept

25  by the applicable State Department of Motor Vehicles.

26        60.    Typicality: The claims of the representative Plaintiffs are typical of the

27  claims of the Class in that the representative Plaintiffs, like all Class Members,

28  purchased and/or leased a Class Vehicle designed, manufactured, and distributed by

KNAPP,
PETERSEN
& CLARKE

-13-

BMW.  The representative Plaintiffs, like all Class Members, have been damaged
by Defendant's misconduct in that they have incurred or will incur the cost of
repairs relating to the Sunroof Defect.  Furthermore, the factual bases of BMW's
misconduct are common to all Class Members and represent a common thread of
fraudulent, deliberate, and negligent misconduct resulting in injury to all Class
Members.

61.    Commonality: There are numerous questions of law and fact common
to Plaintiffs and the Class that predominate over any question affecting only
individual Class Members.  These common legal and factual issues include the
following:

a.    whether the Class Vehicles suffer from the Sunroof Defect;

b.    whether the Sunroof Defect constitutes an unreasonable safety
risk;

c.    whether Defendant knows about the Sunroof Defect and, if so,
how long Defendant has known of the defect;

d.    whether the defective nature of the Class Vehicles constitutes a
material fact;

e.    whether Defendant has a duty to disclose the defective nature of
the Class Vehicles to Plaintiffs and Class Members;

f.    whether Plaintiffs and the other Class Members are entitled to
equitable relief, including but not limited to a preliminary and/or permanent
injunction.

g.    Whether Defendant knew or reasonably should have known of
the Sunroof Defect in the Class Vehicles before it sold or leased them to Class
Members;

h.    Whether Defendant should be declared financially responsible
for notifying all Class Members of the problems with the Class Vehicles and for the
costs and expenses of repair and replacement of the Class Vehicles;

KNAPP,
PETERSEN
& CLARKE

-14-

1765701.1  08000/00974

1         i.      Whether Defendant breached the express terms of its own

2 warranty by refusing to repair damage caused by the Sunroof Defect during the

3 term of the warranty;

4         j.      Whether Defendant concealed and refused to disclose the nature

5 of the Sunroof Defect from purchasers and lessees of Class Vehicles at the time of

6 sale and otherwise.

7      62.    Adequate Representation: Plaintiffs will fairly and adequately protect

8 the interests of the Class Members. Plaintiffs have retained attorneys experienced

9 in the prosecution of class actions, including consumer and product defect class

10 actions, and Plaintiffs intend to prosecute this action vigorously.

11      63.    Predominance and Superiority: Plaintiffs and the Class Members have

12 all suffered and will continue to suffer harm and damages as a result of Defendant's

13 unlawful and wrongful conduct. A class action is superior to other available

14 methods for the fair and efficient adjudication of the controversy. Absent a class

15 action, most Class Members would likely find the cost of litigating their claims

16 prohibitively high and would therefore have no effective remedy at law. Because

17 of the relatively small size of the individual Class Members' claims, it is likely that

18 only a few Class Members could afford to seek legal redress for Defendant's

19 misconduct. Absent a class action, Class Members will continue to incur damages,

20 and Defendant's misconduct will continue without remedy. Class treatment of

21 common questions of law and fact would also be a superior method to multiple

22 individual actions or piecemeal litigation in that class treatment will conserve the

23 resources of the courts and the litigants, and will promote consistency and

24 efficiency of adjudication.

25 ///

26 ///

27 ///

28 ///

KNAPP,
PETERSEN
& CLARKE

-15-

# FIRST CAUSE OF ACTION

(Violation of California's Consumer Legal Remedies Act,

California Civil Code § 1750, *et seq.* and The Florida Deceptive And Unfair Trade

Practices Act, § 501.204 (1))

64.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

65.     Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Sub-Class.

66.     Defendant is a "person" as defined by California Civil Code § 1761(c) and defendant is guilty of committing representations, omissions or practices as defined in the Florida Deception and Unfair Trade Practices Act ("the Act").

67.     Plaintiffs and Class Members are "consumers" or "persons" within the meaning of California Civil Code § 1761(d) and § 501.211 of the Act.

68.     By failing to disclose and concealing the defective nature of the Class Vehicles from Plaintiffs and prospective Class Members, Defendant violated California Civil Code § 1770(a), as it made representations which were deceptive, represented that Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code §§ 1770(a) (4) (5) (7) & (9). Moreover, Defendant violated the Act at § 501.204 (1) based on the same conduct described herein.

69.     Defendant's unfair and deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

70.     Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

KNAPP,
PETERSEN
& CLARKE

-16-

71.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Sunroof Defect, as well as the associated costs that would have to frequently be expended in order to repair the Class Vehicles due to the Sunroof Defect, because:

a.   Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles, and relating to the Sunroof Defect;

b.   Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until manifestation of the defect; and

c.   Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the safety defect.

72.   In failing to disclose the defective nature of the Class Vehicles, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

73.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase a Class Vehicle.  Had Plaintiffs and other Class Members known that the Class Vehicles had the Sunroof Defect, they would not have purchased a Class Vehicle.

74.   Plaintiffs and the Class Members are reasonable consumers who do not expect their Class Vehicles will experience a Sunroof Defect.  That is the reasonable and objective consumer expectation relating to the Sunroof Defect.

75.   As a result of Defendant's conduct, Plaintiffs and Class Members have been harmed and have suffered actual damages in that the Class Vehicles are continually experiencing the Sunroof Defect, causing inconvenience, creating a serious safety hazard, and causing Class Members to spend money.

76.   As a direct and proximate result of Defendant's unfair or deceptive

1  acts or practices, Plaintiffs and Class Members have suffered and will continue to

2  suffer actual damages.

3       77.   Plaintiffs and the Class are entitled to equitable relief.

4       78.   Plaintiffs has provided BMW with notice of its alleged violations of

5  the CLRA pursuant to California Civil Code § 1782(a).  BMW failed to provide the

6  appropriate relief for its violation of the CLRA within 30 days of the date of the

7  notification letter.  A true and correct copy of the letter is attached hereto as

8  exhibit 1. Also, a true and correct copy of a declaration of the Harris Declaration is

9  attached hereto as exhibit 2.

10      79.   Thus, Plaintiffs, pursuant to § 1782(a) of the Civil Code and  the Act,

11 also seeks actual, statutory, and punitive damages in addition to equitable relief.

12                          **SECOND CAUSE OF ACTION**

13      (Violation of UCL California Business & Professions Code § 17200, *et seq.*)

14      80.   Plaintiffs hereby incorporate by reference the allegations contained in

15 the preceding paragraphs of this Complaint.

16      81.   Plaintiffs bring this cause of action on behalf of themselves and on

17 behalf of the Class Members.

18      82.   California Business & Professions Code § 17200 prohibits acts of

19 "unfair competition," including any "unlawful, unfair or fraudulent business act or

20 practice" and "unfair, deceptive, untrue or misleading advertising."

21      83.   Plaintiffs and the Class Members are reasonable consumers who do not

22 expect their Class Vehicles to experience the Sunroof Defect.  That is the

23 reasonable and objective consumer expectation relating to the Class Vehicles.

24      84.   Defendant knew that the Class Vehicles suffered from an inherent

25 defect, were defectively designed or manufactured, would experience the Sunroof

26 Defect, and were not suitable for their intended use.

27      85.   In failing to disclose the Sunroof Defect, Defendant has knowingly and

28 intentionally concealed material facts and breached its duty not to do so.

KNAPP,
PETERSEN
& CLARKE

-18-

1765701.1  08000/00974

86.   Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles because:

a.   Defendant was in a superior position to know the true state of facts about the Sunroof Defect in the Class Vehicles;

b.   Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles; and,

c.   Defendant actively concealed the defective nature of the Class Vehicles from Plaintiffs and the Class.

87.   The facts concealed or not disclosed by Defendant to Plaintiffs and the Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Vehicles.  Had Plaintiffs and other Class Members known that the Class Vehicles had the Sunroof Defect, Plaintiffs and the Class Members would not have purchased Class Vehicles.

88.   Defendant continued to conceal the defective nature of the Class Vehicles even after Class Members began to report problems.  Indeed, Defendant continues to cover up and conceal the true nature of the problem.  Defendant has failed to repair the Sunroof Defect, and has failed to disclose to consumers that the Sunroof Defect still exists in all of the Class Vehicles.  Defendant has also failed to reimburse consumers for costs incurred in connection with the Sunroof Defect.

89.   By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

90.   Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, and were capable of deceiving a substantial portion of the purchasing public.

91.   As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiffs and the Class have suffered and will continue to suffer actual damages.

92.   Defendant has been unjustly enriched and should be required to make

KNAPP,
PETERSEN
& CLARKE

-19-

1765701.1   08000/00974

1  restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the

2  Business & Professions Code.

3  **THIRD CAUSE OF ACTION**

4  (Fraud by Omission)

5  93.   Plaintiffs hereby incorporate by reference the allegations contained in

6  the preceding paragraphs of this Complaint.

7  94.   Defendant knew or should have known that the Sunroof Defect in its

8  Class Vehicles was a condition rendering the Class Vehicles defectively designed

9  or manufactured, causing the Class Vehicles to fail prematurely and rendering the

10  vehicles not suitable for their intended use.

11  95.   Defendant concealed from and failed to disclose to Plaintiffs and the

12  Class the defective nature of the Sunroof Defect.

13  96.   Defendant was under a duty to Plaintiffs and the Class to disclose the

14  defective nature of the Sunroof Defect because:

15  a.   Defendant was in a superior position to know the true state of

16  facts about the Sunroof Defect in the Class Vehicles;

17  b.   Defendant made partial disclosures about the quality of the Class

18  Vehicles without revealing the defective nature of the Class Vehicles; and

19  c.   Defendant actively concealed the defective nature of the Class

20  Vehicles from Plaintiffs and the Class.

21  97.   The facts concealed or not disclosed by Defendant to Plaintiffs and the

22  Class Members are material in that a reasonable person would have considered

23  them to be important in deciding whether to purchase the Class Vehicles.  Had

24  Plaintiffs and other Class Members known that the Class Vehicles had the Sunroof

25  Defect, Plaintiffs and the Class Members would not have purchased Class Vehicles,

26  or would have paid less for them.

27  98.   Defendant continued to conceal the defective nature of the Class

28  Vehicles even after Class Members began to report problems.  Indeed, Defendant

KNAPP,
PETERSEN
& CLARKE

-20-

1   continues to cover up and conceal the true nature of the problem.  Defendant has
2   failed to repair the Sunroof Defect, and has failed to disclose to consumers that the
3   Sunroof Defect still exists in all of the Class Vehicles.

4        99.    Defendant concealed or failed to disclose the true nature of the design
5   or manufacturing defect consisting of the Sunroof Defect existing in its Class
6   Vehicles to induce Plaintiffs and the Class to act thereon. Plaintiffs and the Class
7   justifiably relied on the omission to their detriment. This detriment is evident from
8   Plaintiffs' and Class Members' purchase or lease of Defendant's Class Vehicles.

9        100.   Defendant continued to conceal the defective nature of the Sunroof
10  Defect even after Members of the Class began to report problems. Indeed,
11  Defendant continues to cover up and conceal the true nature of the problem today,
12  including denying reimbursement of repair costs related to the Sunroof Defect.

13       101.   As a direct and proximate result of Defendant's misconduct, Plaintiffs
14  and the Class have suffered and will continue to suffer actual damages.

15                               **RELIEF REQUESTED**

16       102.   Plaintiffs, on behalf of themselves, and all others similarly situated,
17  request the Court to enter judgment against Defendant, as follows:

18           a.    An order certifying the proposed Class and  Sub-Classes,
19  designating Plaintiffs as named representatives of the Class, and designating the
20  Plaintiffs Counsel as Class Counsel;

21           b.    A declaration that Defendant is financially responsible for
22  notifying all Class Members about the defective nature of the Class Vehicles;

23           c.    An order enjoining Defendant from further deceptive
24  distribution, sales, and lease practices with respect to the Class Vehicles, and to
25  repair the Class Vehicles so that they will no longer possess the Sunroof Defect;

26           d.    An award to Plaintiffs and the Class of compensatory,
27  exemplary, and statutory damages, including interest, in an amount to be proven at
28  trial;

KNAPP,
PETERSEN
& CLARKE

-21-

1765701.1  08000/00974

1        e.     An award to Plaintiffs and the Class of any repair costs they are

2  owed;

3        f.     A declaration that Defendant must disgorge, for the benefit of

4  the Class, all or part of the ill-gotten profits it received from the sale or lease of the

5  Class Vehicles, or make full restitution to Plaintiffs and Class Members;

6        g.     An award of attorneys' fees and costs, as allowed by law;

7        h.     An award of attorneys' fees and costs pursuant to California

8  Code of Civil Procedure § 1021.5, and the Act.

9        i.     An award of pre-judgment and post-judgment interest, as

10  provided by law;

11        j.     Leave to amend the Complaint to conform to the evidence

12  produced at trial; and

13        k.     Such other relief as may be appropriate under the circumstances.

14  Dated: July 1, 2013

KNAPP, PETERSEN & CLARKE

By:_____

Stephen M. Harris
Attorneys for Plaintiffs
WALTER CHANG and ANNIE
STUBBS, individually, and on
behalf of a class of similarly situated
individuals

KNAPP,
PETERSEN
& CLARKE

-22-

1765701.1  08000/00974

1

## DEMAND FOR JURY TRIAL

2  103.  Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a

3  trial by jury of any and all issues in this action so triable of right.

4  Dated: July 1, 2013

KNAPP, PETERSEN & CLARKE

By: _____

Stephen M. Harris
Attorneys for Plaintiffs
WALTER CHANG and ANNIE
STUBBS, individually, and on
behalf of a class of similarly situated
individuals

KNAPP,
PETERSEN
& CLARKE

-23-

1765701.1  08000/00974

The Law Office Of

**EXHIBIT 1**

ROBERT L. STARR

23277 Ventura Boulevard
Woodland Hills, California, 91364
Telephone (818) 225-9040
Facsimile (818) 225-9042

March 9, 2013

BY Certified Mail Return Receipt Requested
And First Class Mail

Ludwig Willisch
Chief Executive Officer
BMW of North America, LLC
300 Chestnut Ridge Road
Woodcliff Lake, New Jersey 07677
Return Receipt # 70120470000247732336

BMW of North America, LLC
Care of CT Corporation System
818 7th Street
Los Angeles, California 90017
Return Receipt # 70120470000247732343

CLRA Letter Re:  BMW SUNROOF DEFECT

To Whom it May Concern:

I am writing this letter on behalf of my client Walter Chang ("CHANG").

Pursuant to the California Consumer Legal Remedies Act (California Civil Code section 1750 *et seq.*,) and specifically, sections 1782 (a)(1) and (2), I hereby notify you that BMW of North America, LLC ("BMW") has violated section 1770 of the CLRA by warranting, advertising, and selling defective vehicles, that it knew, or should have known, are and were at the time of sale defective, to thousands of consumers in California and throughout the United States. After selling said defective vehicles, BMW refused to provide warranty coverage for defects, mechanical breakdowns, and damage that directly related to said known defects.

1

The BMW vehicles which relate to this correspondence are as follows:

*All BMW E53 model vehicles (also known as model year 2000-2006 BMW X5 vehicles) equipped with sunroofs;*

*All BMW E60 and E61 model vehicles produced up until November of 2008 (also known as model year 2003-2010 BMW 5 Series vehicles) equipped with sunroofs;*

*All BMW E65 and E66 model vehicles (also known as Model Year 2001-2008 BMW 7 series vehicles) equipped with sunroofs;*

*All BMW E70 model vehicles produced up to March of 2009 (also known as Model Year 2006-2013 BMW X5 vehicles) equipped with sunroofs;*

*All BMW F01 and F02 model vehicles produced up to December of 2008 (also known as Model Year 2008-2013 BMW 7 series vehicles) equipped with sunroofs;*

*All BMW E71 model vehicles produced up to March of 2009 (also known as Model Year 2008-2013 BMW X6 vehicles) equipped with sunroofs;*

*All BMW E83 model vehicles produced up to June of 2009 (also known as Model Year 2003-2008 BMW X3 vehicles) equipped with sunroofs; and*

*And All BMW E91 sport wagon vehicles produced up to March of 2009 (also known as Model year 2004-2011 BMW 3 series sport wagons) equipped with sunroofs.*

All of the above described vehicles are herein referred to as CLASS VEHICLE, or CLASS VEHICLES. All persons who have owned or leased, and who currently own or lease CLASS VEHICLES are referred to herein as CLASS MEMBERS.

Numerous consumers have reported water leaking from the sunroofs of the CLASS VEHICLES into the interior of the CLASS VEHICLES ("SUNROOF DEFECT"), causing numerous safety related problems, including but not limited to electrical failure, stalling, loss of steering ability, and other significant damage to CLASS VEHICLES. The occurrence of the SUNROOF DEFECT is the result of the sunroof systems installed in the CLASS VEHICLES being defectively designed. It is unknown at this time if the SUNROOF DEFECT has resulted in any traffic accidents; however numerous CLASS MEMBERS have complained that the SUNROOF DEFECT has posed a serious safety hazard in the roadway.

BMW has represented to consumers in BMW marketing materials that BMW manufactures the "Ultimate Driving Machine", and that CLASS VEHICLES are safe and reliable vehicles. Unfortunately, due to the SUNROOF DEFECT, the CLASS VEHICLES are not safe and are not reliable. To date BMW has not disclosed the SUNROOF DEFECT

2

to consumers, has concealed the SUNROOF DEFECT from consumers, and has not made any actual effort to immediately protect consumers from the serious safety problems relating to the SUNROOF DEFECT. The nature of the SUNROOF DEFECT is such that if it is not resolved, it is very likely that people will be seriously injured and killed.

I represent CHANG, a consumer who resides in California. CHANG has suffered damage as a result of the SUNROOF DEFECT. CHANG was the owner of a 2006 BMW 530XI, vin #WBANN735X6CN01926 (CHANG VEHICLE). CHANG purchased the CHANG VEHICLE as a used vehicle on or about December of 2006. On or about February of 2010, the CHANG VEHICLE experienced water intrusion as a result of the SUNROOF DEFECT. CHANG took the CHANG VEHICLE to BMW of Mountain View, complaining of the flooding. BMW of Mountain View indicated that the warranty for the CHANG VEHICLE had expired, and that BMW would not offer CHANG any remedy relating to the water intrusion. Subsequently, CHANG took the CHANG VEHICLE to Dinan, an independent repair facility. Dinan repaired the CHANG VEHICLE. Subsequently, the CHANG VEHICLE again experienced damage as a result of the SUNROOF DEFECT in November of 2010. Again, CHANG took the CHANG VEHICLE to Dinan for repairs. With regard to these two repairs, although some of the costs associated with said repairs were covered by CHANG's vehicle insurance, CHANG did have to pay money out of his own pocket in order to cover some of the repairs. Enclosed with this correspondence are the repair records relating to the repairs done by Dinan

At no time prior to CHANG purchasing the CHANG VEHICLE did BMW disclose the SUNROOF DEFECT to CHANG, or to the general public. Furthermore, it is CHANG understands that BMW has not disclosed or even acknowledged the existence of the SUNROOF DEFECT to any consumers prior to consumers purchasing CLASS VEHICLES, or at any subsequent time.

BMW, through its own internal testing, records of customer complaints, dealership repair orders, as well as various other internal sources, was well aware and knew of the SUNROOF DEFECT prior to BMW distributing the CLASS VEHICLES to BMW dealerships. Furthermore, BMW knew of the SUNROOF DEFECT prior to CHANG suffering damage as a result of the SUNROOF DEFECT. BMW failed to disclose and actively concealed the SUNROOF DEFECT to consumers at the time of purchase or lease, and thereafter. BMW continues to conceal the existence, nature, and extent of the SUNROOF DEFECT to consumers, even though the SUNROOF DEFECT is a very serious problem which poses a safety hazard to purchasers of the CLASS VEHICLES, as well as the general public.

CHANG understands that even to this day, BMW has not implemented a fix relating to the SUNROOF DEFECT in order to resolve the SUNROOF DEFECT in the CLASS VEHICLES.

3

BMW's conduct in warranting, advertising, and selling the CLASS VEHICLES, knowing that they contain multiple design defects, constitutes the following violations of section 1770:

1.     BMW represented that the VEHICLES had characteristics or benefits which they did not have (Section 1770(a)(5));

2.     BMW has falsely represented that the VEHICLES were of a particular standard, quality, or grade when they are of another (Section 1770(a)(7)); and

3.     BMW advertised the VEHICLES with the intent not to sell them as advertised (Section 1770(a)(9)).

Pursuant to section 1782 of the CLRA, based on the foregoing, we hereby demand that within thirty (30) days of receiving this letter, BMW:

1.     Make all necessary repairs to all CLASS VEHICLES, so as to remedy all of the problems associated with the SUNROOF DEFECT;

2.     Provide monetary compensation, plus interest, to CHANG and other owners and lessees of CLASS VEHICLES, relating to all of the damages that these consumers have suffered as a result of the SUNROOF DEFECT. Specifically, it is demanded that BMW repurchase each of the CLASS VEHICLES, and provide restitution of all damages, as allowed under California Civil Code Section 1793.2, 1793.22, 1794, and the Consumer Legal Remedies Act to said consumers, inclusive of incidental and consequential damages that have resulted from the SUNROOF DEFECT, and attorney's fees and costs.

Unless BMW takes such action as demanded above within (30) days after your receipt of this letter, I will file a lawsuit against BMW on behalf of CHANG, and each other consumer similarly situated, seeking restitution damages, and other damages as allowed under California Civil Code Section 1782, 1793.2, 1793.22, 1794, under the Consumer Legal Remedies Act, as well as other related causes of action.

This demand is made pursuant to the rights and remedies allowed pursuant to 1782 of the CLRA. If you have any questions regarding this notice and demand, please contact me at (818) 225-9040.

Very truly yours,

Robert Starr, Esq.

Enc.



# DINAN

2232 Old Middlefield Way
Mountain View, CA 94043
Phone **(650) 962-9401** • Fax (650) 962-0133
BAR # AA099955



| Walter Chang | 2009 BMW 530XI | License # 5XON432 | Invoice # 53877 |
|---|---|---|---|
| 2280 Priscilla Ln | | Mileage In: | Inv Date: March 8, 2010 @ 11:39am |
| Los Altos, CA 94022 | VIN: CN01926 | Color: Blue | |
| (650) 823-0316 | Engine: 6.3L; 2996cc; Gas; FI | Unit #: | Service Writer: Erin Wright |
| (650) 823-5815 | Transmission: A | PO #: | Status: Posted |
| | | Mfg. Date: 08/08 | Driver: |

| Vehicle Problems | Requests for Service | Services Performed | Hrs | Qty | Price | Ext |
|---|---|---|---|---|---|---|

Customer states that: Trunk hatch will not lift after presses button. Will unlatch but won't lift.
SOS light is on
Service engine soon light is on
I-Drive display is not showing. I drive knob won't engage, just spins around.
Cruise control warning light came on.
Electrical malfunction light came on.
BRAKE light came on.

| | | | | | | |
|---|---|---|---|---|---|---|
| Labor Service – T/S customer above complaint. KB1 | | | 3.00 | | 150.00 | 450.00 |
| Customer requests us to: repair water damage | | | 5.50 | | 150.00 | 825.00 |
| Labor Service – Clean up water damage, clean panels, Remove headliner and re-install. Replace all control unit. KB1 | | | | | | |
| New    37 14 6 770 411 | Control Unit Air Supply | | | 1.00 | 337.80 | 337.80 |
| New    61 35 6 939 655 | Control Unit Micro Power Module | | | 1.00 | 125.87 | 125.87 |
| New    61 35 6 959 937 | Control Unit Tailgate Lift | | | 1.00 | 174.27 | 174.27 |
| New    66 21 6 954 007 | Control Unit PDC | | | 1.00 | 217.14 | 217.14 |
| New    65 12 6 945 064 | Control Unit Satellite Radio | | | 1.00 | 495.00 | 495.00 |
| Labor Service – Remove/install relays KB1 | | | 0.60 | | 150.00 | 90.00 |
| New    12 63 1 742 690 | Relay | | | 1.00 | 7.65 | 7.65 |
| New    61 36 8 373 700 | Relay | | | 1.00 | 13.95 | 13.95 |
| Labor Service – Remove R/R body front trim panel. KB1 | | | 0.40 | | 150.00 | 60.00 |
| Labor Service – Remove L/R body front trim panel. KB1 | | | 0.40 | | 150.00 | 60.00 |
| Labor Service – Remove/install R/R body side trim panel. KB1 | | | 0.10 | | 150.00 | 15.00 |
| Labor Service – Remove/install L/R body side trim panel. KB1 | | | 0.30 | | 150.00 | 45.00 |
| Labor Service – Remove/install R/Upper rear body trim panel. KB1 | | | 0.30 | | 150.00 | 45.00 |
| Labor Service – Remove/install L/Upper rear body trim panel. KB1 | | | 0.10 | | 150.00 | 15.00 |
| Labor Service – Remove/install R/R body panel cover  KB1 | | | 0.10 | | 150.00 | 15.00 |
| Labor Service – Remove/Install L/R body panel cover  KB1 | | | 1.00 | | 150.00 | 150.00 |
| Labor Service – After replacement of all of the control units, reinstall all control units to the car. KB1 | | | 0.40 | | 150.00 | 60.00 |
| Labor Service – Remove/Install Rear body lining panel.  KB1 | | | 0.10 | | 150.00 | 15.00 |
| Labor Service – Remove/install R/Rear body pad. KB1 | | | 0.10 | | 150.00 | 15.00 |
| Labor Service – Remove/install L/R body pad  KB1 | | | 0.60 | | 150.00 | 90.00 |
| Labor Service – Remove/install rear body compartment panel.  KB1 | | | 0.50 | | 150.00 | 75.00 |
| Labor Service – Remove and install battery  KB1 | | | | | | |

Page 1 of 2



**DINAN**

2232 Old Middlefield Way
Mountain View, CA 94043
Phone **(650) 962-9401** • Fax (650) 962-0133
BAR # AA099955

| | | | |
|---|---|---|---|
| lter Chang | **2006 BMW 530Xi** | **License # 5XON432** | **Invoice # 53877** |
| 2380 Priscilla Ln | | Mileage In:40155   Out:40155 | Inv Date:March 2, 2010 @ 11:28am |
| Los Altos, CA 94022 | VIN: CN01926 | Color:Blue | |
| | Engine:L6 3L, 2996cc, Gas, FI | Unit #: | Service Writer:  Eric Wright |
| (650) 823-0319 | Transmission: A | PO #: | Status: Posted |
| (650) 823-5815 | | Mfg. Date:  03/05 | Driver: |

Continued from previous page

**Warranty**
24 month/unlimited mileage warranty on all parts and labor. Service warranty until
next service due. Due to the nature of racing Dinan offers no warranty on its
racing parts and labor.

Posted: 3/19/10 - 6:04PM
Check (4818577501)                $2,504.44
American Express                  $1,000.00

**Invoice Summary**
Parts            $1,381.64
Labor            $1,995.00

Tax Breakdown

X _____
(customer acknowledges receipt of merchandise and services)

Page 2 of 2                   Discard old parts        Original Estimate:    $180.00

Sub Total:        $3,376.64
Sales Tax (DEF):    $127.80

**Total:**        $3,504.44



**DINAN**

2232 Old Middlefield Way
Mountain View, CA 94043
Phone (650) 962-9401 • Fax (650) 962-0133
BAR # AA099955

Walter Chang                    2006 BMW 530XI                    License # 5XQN432                    Invoice # 59562

Stephen M. Harris, Esq. (State Bar No. 110626)
e-mail: smh@kpclegal.com
KNAPP, PETERSEN & CLARKE
550 North Brand Boulevard, Suite 1500
Glendale, California, 91203-1922
Telephone: (818) 547-5000
Facsimile: (818) 547-5329

**EXHIBIT 2**

Attorneys for Plaintiffs,
WALTER CHANG, and ANNIE STUBBS, individually, and on behalf of a
class of similarly situated individuals,

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER CHANG, and ANNIE STUBBS, individually, and on behalf of a call of similarly situated individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>BMW OF NORTH AMERICA, LLC.<br><br>    Defendant. | Case Number:<br><br>**DECLARATION OF STEPHEN M. HARRIS IN SUPPORT OF PLAINTIFFS' SELECTION OF FORUM FOR TRIAL OF PLAINTIFFS' CLAIMS ARISING UNDER THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**<br><br>[Cal. Civ. Code, § 1780, subd. (d)] |

Case No.:

# DECLARATION OF STEPHEN M. HARRIS

I, Stephen M. Harris, declare:

    1.    I am admitted, in good standing, to practice as an attorney in the State of California. All of the matters set forth herein are within my personal knowledge, except those matters that are stated to be upon information and belief. As to such matters, I believe them to be true.

    2.    Pursuant to Cal. Civ. Code § 1780(d), this Declaration is submitted in support of Plaintiffs' selection of forum for trial of Plaintiffs' cause of action alleging violation of California's Consumer Legal Remedies Act.

    3.    On information and belief, Defendant BMW OF NORTH AMERICA, LLC. ("BMW") is a Delaware Limited Liability Company with its agent for service of process at 818 West 7th Street, Suite 200, Los Angeles, California 90017. Defendant BMW conducts business it the state of California. BMW, through its business of distributing, selling, and leasing vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate.

    4.    In addition, a substantial part of the events or omissions giving rise to Plaintiff's claims and a substantial part of the property that is the subject of this action are in this district. Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

    5.    Based on the facts set forth herein, this Court is a proper venue for the prosecution of Plaintiff's cause of action alleging violation of California's Consumer Legal Remedies Act. *See* Cal. Civ. Code § 1780(d).

///
///
///
///

1     I declare under penalty of perjury under the laws of the State of California

2   and the United States of America that the foregoing is true and correct and that

3   this declaration was executed by me on this 24 day of April 2013, at Glendale,

4   California.

5

6

7                                   Stephen M. Harris, Esq.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

 SI B 54 02 08
Special Roofs

October 2009
Technical Service

This Service Information bulletin supersedes SI B54 02 08 **dated January 2008.**
NEW designates changes to this revision

SUBJECT
**Water Leak from Sunroof**

MODEL
E60 (5 Series)

SITUATION
After periods of heavy rainfall, water or residual moisture may be found in one or more of the following areas:

- Rear area of the headliner
- C-pillar trim panels
- Rear seat floor or under the rear seat
- Various areas of the vehicle's trunk.

CAUSE

1. Clogged or disconnected sunroof drains
2. Poorly sealed sunroof cassette
3. Excessive volume of water entering the sunroof cassette.

CORRECTION

1. Clean out or properly secure the sunroof drains.
2. Perform a sealing modification to the sunroof cassette.
3. Reduce the amount of water entering the cassette.

PROCEDURE
The following procedures should be carried out in the following order, and should be stopped once the leak has been identified and corrected:

**Cause 1 (Clogged or disconnected sunroof drains)**

1. Visually inspect the sunroof drains to ensure that they are not blocked by debris and remove as necessary.
2. Inspect for clogs within the drain tubes.
   a. Blow compressed air through the sunroof drains to ensure that they are not clogged.
   b. NOTE: Use caution when applying compressed air to the drains so the drain tubes do not become separated from the cassette.
   c. Pour water into each of the drains to ensure that each drain can evacuate water at a similar rate.

**Cause 2 (Poorly sealed sunroof cassette)**

1. Remove the headliner per repair instruction RA 51 44 011 and water test the sunroof to reproduce the customer complaint.
   a. While water testing, inspect the rear corner drain pockets of the cassette for any signs of water seeping through between the cassette frame and these drain pockets.



b. If any water seepage is observed, apply sealant to the seam where the drain pocket (1) meets the cassette (2). The retaining tab (3) must also be sealed. Wurth Euroseal Gel or a comparable silicone sealant may be used for this procedure.

c. Seal the opposite side of the cassette in a similar fashion as a preventative measure.

2. Inspect the connection of the drain tube to the cassette for any water seepage.
   o If any water seepage is observed, seal the drain tube to the cassette using Wurth Euroseal Gel or a comparable silicone sealant.

**Cause 3 (Excessive amount of water entering the cassette)**

1. Replace the perimeter seal per Repair Instruction RA 54 12 117.
2. Carefully adjust the sunroof glass per Repair Instruction RA 54 12 003.
3. Water-test the vehicle again to ensure that no further leaks are present.

PARTS INFORMATION

| Part Number | Description | Quantity |
|---|---|---|
| 54 13 7 117 551 | Perimeter Seal | 1 – if necessary |

Wurth Euroseal Gel (article # 18920104) may be used for this sealing operation.

WARRANTY INFORMATION

NEW Provided that the water ingress is caused by a defect in material or workmanship, this repair can be claimed under the terms of the BMW New Vehicle Limited Warranty.

| Defect Code | 54 12 10 48 00 |
|---|---|

| Cause 1 | | Main Work* |
|---|---|---|
| Labor Operation: | 54 99 000 | Work time to unclog the sunroof drains |
| Labor Allowance: | Refer to KSD | |

**Cause 2**                              **Main Work\***

Labor Operation:        51 44 011        R&I Headliner

Labor Allowance:        Refer to KSD

Labor Operation:        54 99 000        **Work time to perform sealing operation**

Labor Allowance:        Refer to KSD

**Cause 3**                              **Main Work\***

Labor Operation:        54 12 117        Replacing seal for glass sunroof lid

Labor Allowance:        Refer to KSD

Labor Operation:        54 12 503        Adjusting glass sunroof lid

Labor Allowance:        Refer to KSD

\*Main Work:    Use this labor operation number when this is the only repair being performed, or if this is the main repair when performed along with other repairs at the same time. If this is not the main repair, refer to KSD for the associated (+) labor operation code.

[ Copyright © 2009 BMW of North America, LLC ]

# EXHIBIT 4

 SI B54 04 09
Special Roofs

March 2010
Technical Service

This Service Information bulletin supersedes SI B54 04 09 **dated November 2009.**
NEW designates changes to this revision
SUBJECT
**Wind Noise or Water Leak from the Sunroof**
MODEL
E53 (X5)
E60, E61 (5 Series) produced up to 11/2008
E65, E66 (7 Series)
E70 (X5) produced up to 3/2009
F01, F02 (7 Series) produced up to 12/2008
E71 (X6) produced up to 3/2009
E83 (X3) produced up to 6/2009
E91 (3 Series Sports Wagon) produced up to 3/2009
SITUATION
A wind noise or water leak may be present due to an insufficient seal between the sunroof glass panels and the perimeter seal. This insufficient seal typically takes a year or longer to cause any noticeable problems.
CAUSE

- The hollow/bulb-style seal has taken a permanent set in the compressed position.
- The seal material has started to deteriorate over time.

CORRECTION
Replace the seal using an updated part, which utilizes a different material with improved durability. In addition, the geometry of the seal has been optimized for improved sealing.
In conjunction with this new style seal, some vehicles may requite a coding update to avoid future problems pertaining to the anti-trap protection being activated when no obstruction is present.
PROCEDURE

1. Replace the perimeter seal per Repair Instruction REP 54 13 055.
2. **E60 and E61 vehicles produced up to 11/2008:**

Program the vehicle using ISTA/P 2.31.2 or later.
**E70 and E71 vehicles produced up to 3/2009:**
Program the vehicle using ISTA/P 2.33.0 or later.
**E83 vehicles produced up to 6/2009:**
Program the vehicle using ISTA/P 2.34.0 or later.
**E91 vehicles produced up to 3/2009:**
Program the vehicle using ISTA/P 2.33.0 or later.
NEW **E53, E65, and E66** – No updates are required when fitting the updated seal to these vehicles. Note that ISTA/P will automatically reprogram and code all programmable control modules that do not have the latest software.

For information on programming and coding with ISTA/P, refer to CenterNet / Aftersales Portal / Service / Workshop Technology / Vehicle Programming.
Other models covered by this Service Information do not require a coding update.

3.  Initialize the sunroof per Repair Instruction RA 54 0... and then operate it several times to ensure that it does not activate anti-trap protection. If anti-trap protection is activated, ensure that the perimeter seal is properly installed and readjust the glass panels. This situation is quite rare.

PARTS INFORMATION

| Part Number | Description | Quantity |
| --- | --- | --- |
| 54 10 7 245 551 | Perimeter seal – standard size sunroof | 1 |
| 54 10 7 199 533 | Perimeter seal – panoramic sunroof | 1 |

WARRANTY INFORMATION
Covered under the terms of the BMW New Vehicle Limited Warranty.

**Defect Code:**      **54 12 20 01 00**

| Labor Operation: | Labor Allowance: | Description: |
| --- | --- | --- |
| 54 12 117* | Refer to KSD | Replacing seal for glass sunroof lid |
| Refer to KSD | Refer to KSD | Program and code control modules |

*Main Work - use this labor operation number when this is the only repair being performed, or if this is the main repair when performed along with other repairs at the same time. If this is not the main repair, refer to KSD for the associated (+) labor operation code.

In cases where ISTA requires the replacement of control modules or additional programming because certain control modules failed to program correctly, print out the Measures Plan and Final Report and attach these reports to the RO in the vehicle file. This additional work should be claimed under the defect code listed in this bulletin, using the labor operation and labor allowance from the KSD.

[ Copyright © 2010 BMW of North America, LLC ]

1

**PROOF OF SERVICE**
**Chang v. BMW of North America LLC**
**CV13-02902 PSG (AGRx)**

2

3   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

4

5        I am employed in the County of Los Angeles, State of California.  I am over the age of 18
and am not a party to the within action.  My business address is 550 North Brand Boulevard, Suite
6   1500, Glendale, California 91203-1922.  On July 1, 2013, I caused the foregoing document(s)
described as PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR:
6   1. Violations of California Consumer Legal Remedies Act; 2. Violations of Unfair Business
Practices Act; 3. Fraud; DEMAND FOR JURY TRIAL to be served on the interested parties in this
7   action as follows:

8

9        By placing a true copy thereof enclosed in a sealed envelope(s) addressed as stated below:

10   Troy M. Yoshino, Esq.                                Robert L. Starr, Esq,
Eric J. Knapp, Esq.                                  The Law Offices of Robert L. Starr
Aengus H. Carr, Esq.                                 23277 Ventura Boulevard
11   Carroll, Burdick & McDonough LLP                     Woodland Hills, CA 91364
44 Montgomery Street, Suite 400
12   San Francisco, CA 94104                              FAX: 818-225-9042; Tel: 818-225-9040;
robert@starrlawmail.com; Co-Counsel for
13   FAX: 415-989-0932; Tel: 415-989-5900;               Plaintiffs
tyoshino@cbmlaw.com; eknapp@cbmlaw.com;
14   acarr@cbmlaw.com; Attorneys for Defendant
BMW of North America, LLC

15

[X]   **BY MAIL:** I sealed and placed such envelope for collection and mailing to be deposited in
16        the mail on the same day in the ordinary course of business at Glendale, California.  The
envelope was mailed with postage thereon fully prepaid.  I am readily familiar with this
17        firm's practice of collection and processing correspondence for mailing.  It is deposited
with the U.S. Postal Service on that same day in the ordinary course of business.

18

I declare under penalty of perjury that the foregoing is true and correct.

19

Executed on July 1, 2013, at Glendale, California.

20

21        _____Marlinda Ochoa_____                            _____
(Type or print name)                                  (Signature)
22

23

24

25

26

27

KNAPP,
PETERSEN      28
& CLARKE

1765728.1   08000/00974